UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

T.L.E.,
                Plaintiff,

     v.                                                **DECISION AND ORDER**
                                                          23-CV-604-A

FRANK BISIGNANO,[1]
Commissioner of Social Security,

                Defendant.
───────────────────────────────

### I.    INTRODUCTION

Plaintiff T.L.E. brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking review of the Commissioner's determination denying Plaintiff disability benefits under the Social Security Act. Plaintiff (Dkt. 6) and the Commissioner (Dkt. 9) have cross-filed motions for judgment on the pleadings. For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

#### A.  *Procedural History*

On February 9, 2017, Plaintiff T.L.E. (d/o/b November 4, 1993) filed protective applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits, pursuant to Titles II and XVI of the Social Security Act ("the

---

[1] On May 7, 2025, Frank Bisignano was sworn in as the Commissioner of Social Security. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

Act"), 42 U.S.C., Chapter 7, respectively. (T. 173, 180, 190).[2] Plaintiff alleged disability as of January 1, 2017, based upon seizure disorder; bipolar disorder, and depression. (T. 38).

After Plaintiff's claims were initially denied on April 14, 2017 (T. 107), Plaintiff, on April 19, 2017, filed a request for a hearing. (T.123). Plaintiff, represented by an attorney, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Anthony Dziepak on January 28, 2019. (T. 28-80). On April 8, 2019, the ALJ issued a decision finding Plaintiff not disabled through the date of the administrative decision. (T. 15-23). On June 18, 2020, the Appeals Council denied Plaintiff's request for review. (T. 720-725). Thereafter, on June 28, 2021, pursuant to a stipulation between the parties, this Court remanded the case back to the SSA (T. 761-62), and on January 4, 2022, the Appeals Council remanded the case for a new hearing to secure additional evidence and conduct further analysis of Plaintiff's claims. (T. 766-772).

On January 17, 2023, ALJ Stephan Bell held a new hearing. (T. 681-703). Plaintiff appeared with counsel and testified. (T. 686-696). The ALJ also received testimony from Joseph Young, a vocational expert. (T. 697-702).

### B. The ALJ's Decision

On February 23, 2023, ALJ Bell issued a decision which denied Plaintiff's application for benefits. (T. 659-673). The ALJ found that Plaintiff met the insured

---

[2] References herein preceded by "T" are to consecutively paginated, Bates-stamped pages within the administrative transcript of official proceedings in this case (Dkt. #5).

status requirements of the Social Security Act through June 30, 2023 (T. 663) and had not engaged in substantial gainful activity since the alleged onset date of January 1, 2017. (T. 663).

The ALJ concluded that Plaintiff had severe impairments of seizure disorder, major depression disorder, and generalized anxiety disorder. (T. 663). However, the ALJ found that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T. 663-665).

The ALJ further determined that Plaintiff, who had no past relevant work (T. 671), retained the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: (1) Plaintiff was capable of lifting and carrying and pushing and pulling 20 pounds occasionally and 10 pounds frequently; (2) Plaintiff was capable of sitting for 6 hours, standing for 6 hours, walking for 6 hours; (3) Plaintiff could climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds; (4) Plaintiff could never work at unprotected heights, never near moving mechanical parts and never operate a motor vehicle; (5) Plaintiff could perform simple, routine tasks and make simple work-related decisions; (6) Plaintiff can occasionally interact with supervisors, coworkers, and the public; and (7) Plaintiff can occasionally interact with supervisors, coworkers, and the public. (T. 665-671).

Considering Plaintiff's age (23 on the date of the disability onset), education (at least high school), work experience (no past relevant work), and RFC, the ALJ

determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T. 672).

### C. The Instant Action

Plaintiff commenced this action, by and through his counsel, with the filing of a complaint on June 27, 2023. Dkt. 1. Plaintiff seeks judgment in his favor claiming that the ALJ erred: (1) in determining that Plaintiff retained an RFC which failed to incorporate moderate limitations he had in interacting adequately with supervisors, coworkers, and the public, and regulating emotions, controlling behavior, and maintaining well-being; and (2) in finding that Plaintiff's subjective complaints and statements were not supported by the medical evidence of record.  Dkt 6.  The Commissioner, on the other hand, interposed a brief in opposition to Plaintiff's motion and in support of its request for judgment on the pleadings.  Dkt. 9.

## II.     APPLICABLE LAW

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is

disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d at 151 (internal quotations omitted).

### B. *Legal Standard to Determine Disability*

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision.  *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III. ANALYSIS

#### A. The ALJ Did Not Err in Determining Plaintiff's RFC or in Her Credibility Determination

Plaintiff argues that the ALJ erred: (1) in failing adequately to incorporate into the RFC determination, an assessment from consultive examiner Dr. Schaich, who determined that Plaintiff had moderate limitations in interacting adequately with supervisors, coworkers, and the public, and regulating emotions, controlling behavior, and maintaining well-being, see, Dkt. 6-1, pp. 11-12; and (2) in her credibility analysis. See, Dkt. 6-1, pp. 12-14.

Regarding Plaintiff's first claim, the ALJ did explicitly determine in her RFC that Plaintiff's mental impairments, "limit[ed] him to work where he can perform simple, routine tasks and make simple work-related decisions; and he can occasionally interact with supervisors, coworkers, and the public." (T. 670). While the ALJ found Dr. Schiach's assessment regarding Plaintiff's "moderate limitation in ability to regulate emotion, control behavior, and maintain well-being" to be "generally persuasive" (T. 670), Dr. Schiach also determined that although Plaintiff's exam was consistent with "psychiatric problems" such condition "did not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (T. 913). Further, the ALJ also found "generally persuasive" (T. 670) the assessment of another consultive examiner, Dr. Santarpia, who determined that Plaintiff only had "mild impairment" in "regulating emotions, controlling behavior, and

7

maintaining well-being" and who also determined that Plaintiff's difficulties in that regard were "caused by lack of seeking treatment." (T. 406).

This Court determines that the ALJ was entitled to craft an RFC based upon all the evidence in the record and to reject portions of medical opinions that conflicted with other evidence, such as treatment notes. See *Patrick R. v. Commissioner of Social Security*, 2022 WL 17247242, *3 (W.D.N.Y. 2022) ("[i]It has been well-recognized that it is the ALJ who is tasked with formulating an RFC based on a review of the entire record, and that it is within the ALJ's discretion to resolve genuine conflicts in the evidence").  In crafting the RFC, the ALJ properly accounted for Plaintiff's limitations. Up to moderate limitations in the functional area of regulating emotion, controlling behavior, and maintaining well-being may be accounted for in an RFC—such as that crafted by the ALJ here—that limits a claimant to simple, routine work with limited interactions with others. See *Michelle K. v. Commissioner of Social Security*, 527 F.Supp.3d 476, 483 (W.D.N.Y. 2021) (RFC limiting plaintiff to "simple, routine, and repetitive tasks, making simple work-related decisions, and occasionally interacting with supervisors, coworkers, and the public" was consistent with limitations in doctor's opinion that included moderate limitations in the ability to "regulate emotions, control behavior, and maintain well-being"); see also *David B. v. Commissioner of Social Security*, 2021 WL 6133282, *2-3 (W.D.N.Y. 2021) (affirming ALJ's determination limiting plaintiff to "simple, routine, repetitive work which did not require more than occasional contact with others" where the consultative examiner and state agency reviewer found plaintiff had, *inter alia*, mild-

8

to-moderate limitations in regulating emotions, controlling behavior, and maintaining well-being).

Moreover, the ALJ considered the state agency medical opinions which determined that Plaintiff had: no limitation in his ability to understand, remember or apply information; no limitation in interacting with others; no limitation in concentration, persistence or pace: and no limitation in adapting or managing oneself. (T. 87, 98). In fact, the State medical consultant concluded that "based on the preponderance of evidence in file the claimant's psychiatric allegations are not severe." (T. 87, 98).

While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider ... [a claimant's] purported activities of daily living for the purposes of a credibility determination." *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012). Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(i). In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of h[er] symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014). This is so because "[o]ne strong indication of credibility

9

of an individual's statements is their consistency, both internally and with other information in the record." *Id*.

That additional information in this record included Plaintiff's ability: to care for his personal needs; to prepare meals and grocery shop; to clean; take public transportation and ride a bicycle; to pay bills and manage his finances; to watch television and movies; to play games and video games; to play sports; to listen to the radio; to socialize with friends and family; and to care for his toddler son on a daily basis. (T. 226-235; 399-400; 405-406; 912).  See 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); see also *Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms."); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

Somewhat relatedly, Plaintiff second claim is that the ALJ erred in assessing the credibility of his subjective complaints. See, Dkt. 6-1, pp. 12-14.  In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to

produce'" her symptoms. *Id*. (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id*.; see also *Mary C. o/b/o Kimberly C. v. Comm'r of Soc. Sec.*, No. 6:21-cv-06358-TPK, 2023 WL 4699921, at *4 (W.D.N.Y. July 24, 2023) (describing two-step inquiry for evaluating a claimant's credibility).

    Here, it is clear from her opinion that the ALJ's adverse credibility determination rests on the inconsistency between the Plaintiff's testimony and the other evidence before her. Indeed, Plaintiff's claims regarding the severity of mental health symptoms from which he suffers and the impairments they create are—at least to some extent—undermined by his failure to seek treatment. (T. 406). See, *Marrero v. O'Malley*, 2024 WL 1435923, at *15 (S.D.N.Y. Feb. 14, 2024) ("The ALJ was permitted to consider Plaintiff's failure to follow through on the referral and obtain treatment as part of the decision not to credit Plaintiff's statements regarding the extent of her limitations due to her mental impairment."), *adopted by* 2024 WL 1328382 (S.D.N.Y. Mar. 28, 2024); *Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) ("[The plaintiff's] claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition."). Moreover, the other evidence before the Magistrate Judge—including the opinion evidence, the treatment records, and his daily activities—all support the view that the Plaintiff's impairments were not as severe as he described.

11

While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. See *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore*, 566 F.3d at 306 (it always remains the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Dkt. 9) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: September 2, 2025
        Buffalo, New York